# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEANNE L. LAFRANTZ,<br><br>        Plaintiff,<br>v.<br><br>ST. MARY'S ROMAN CATHOLIC CHURCH,<br>THE DIOCESE OF BROOKLYN<br><br>        Defendants. | **COMPLAINT AND JURY DEMAND**<br><br>Civil Action No. |

Plaintiff, Jeanne LaFrantz, by and through her undersigned counsel, alleges the following:

## NATURE OF CLAIM

1. This case is brought under the New York Child Victims Act (L 2019, ch 11) ("CVA"). It concerns the repeated acts of sexual abuse committed by Father Campbell of St. Mary's Roman Catholic Church and the Diocese of Brooklyn against Plaintiff, Jeanne, who was a minor at the times of the sexual abuse.

2. Those acts include conduct by Father Campbell that would constitute a sexual offense as defined by, *inter alia,* New York Penal Law §§ 130.55, 130.80(l)(a), and 130.65(4).

3. Over the course of six (6) years, from approximately 1960 until 1966, Father John F. Campbell ("Father Campbell") of the Diocese of Brooklyn regularly sexually abused Jeanne LaFrantz ("Jeanne" or "Plaintiff") at St. Mary's Roman Catholic Church ("St. Mary's or "Defendant").

4. Jeanne was subjected to sexual abuse, which included, touching, kissing, groping, squeezing, and undressing.

5. Upon information and belief, Father Campbell was employed as a priest at St. Mary's when the abuse detailed herein occurred.

1

## PARTIES

6. Plaintiff incorporates all consistent paragraphs of this Complaint as if fully set forth.

7. At the time of the sexual abuse herein, Plaintiff was a minor residing in the state of New York. Plaintiff currently resides in the State of Hawaii.

8. Defendant, the Diocese of Brooklyn was, and continues to be, a religious organization and a non-profit religious corporation duly organized and existing under, and pursuant to, the laws of the State of New York, and authorized to conduct business and conducting business in the State of New York, with its principal place of business at 310 Prospect Park West, Brooklyn, New York.

9. Defendant, St. Mary's Roman Catholic Church was, and continues to be, a religious entity within the Diocese of Brooklyn, which operates both a parish and a school, with its principal place of business at 1008 49th Avenue, Queens, New York.

## JURISDICTION AND VENUE

10. Plaintiff incorporates all consistent paragraphs of this Complaint fully set forth herein.

11. Plaintiff brings this complaint under 28 U.S.C. § 1332 as Plaintiff is a resident of Hawaii, all Defendants maintain principal place of business is in New York, and the amount in controversy exceeds $75,000.

12. Venue for this action is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1), because Defendants maintain their principal places of business within this District.

## FACTS COMMON TO ALL COUNTS

13. Defendants employed Father Campbell as a priest at St. Mary's.

14. Defendants held itself out to be a religious institution of learning where students, including minor Plaintiff, would be safe.

15. Defendants owned and operated St. Mary's and employed the priests at the Church, including Father Campbell.

16. Defendants knew the amount of and type of time spent alone with Father Campbell, Father Campbell's access to Plaintiff, Father Campbell's ability to molest Plaintiff.

17. Father Campbell began abusing Plaintiff when she was in sixth grade and approximately ten (10) years old.

18. Father Campbell sexually abused Plaintiff on a weekly basis, approximately three to four times per week, at St. Mary's, where Plaintiff was a student, during the 1960's.

19. The sexual abuse suffered by Plaintiff included touching, kissing, groping, and squeezing.

20. Father Campbell was a regularly, and uncomfortably touchy man, and he had regular contact with the students at St. Mary's, including Plaintiff, whom he touched, and molested, and provided money to stay quiet.

21. Jeanne attended high school at Mater Christi Diocesan High School in Queens, New York.

22. At one point during her freshman year of high school, Jeanne felt compelled to disclose the sexual abuse by Father Campbell during confessional.

23. Confessions were being heard by one of the school's priests in the high school auditorium; Jeanne told the parish priest she had been forced to engage in sexual acts.

24. The priest then asked Jeanne, "what boy did you do these things with?"

25. When Jeanne answered, "Father Campbell," the priest told Jeanne she was a shameful girl to lie about a priest, and he told Jeanne she would go to Hell for it.

26. Thereafter, Jeanne never spoke another word about the sexual abuse by Father Campbell, and Jeanne lived in fear the priest she spoke to in confessional would tell the nuns, and she would be kicked out of school and bring shame on her mother.

27. During the 1960's, sexual abuse in Catholic institutions, including both churches and schools was well known but commonly hidden from the public, parents, and parishioners.

28. Defendant is vicariously liable for the acts of Father Campbell through the doctrine of *respondeat superior*, in addition to direct liability described here and below.

29. As a direct and proximate result of Defendants' acts, omissions, negligence, gross negligence, and conduct described herein, Plaintiff sustained injuries to her person and property—including, but not limited to, great pain of mind and body, shock, mental anguish, emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, anger, rage, frustration, loss of enjoyment of life, loss of consortium, loss of love and affection, sexual dysfunction, past and future medical expenses for psychological treatment, therapy, and counseling, lost wages and employment opportunities, lost choses in action, and other compensation to which she was entitled.

## FIRST CAUSE OF ACTION
## NEGLIGENCE

30. Plaintiff incorporates all consistent paragraphs of this Complaint as if fully set forth under this count.

31. The allegations of fact and law above confirm that St. Mary's had a special relationship and duty to intervene and protect Plaintiff consistent with the Restatement of Torts (Second), sec. 314 (A)(4) and sec. 320; and as more particularly described above regarding a person or entity who has exclusive custody or control of a minor.

32. At all relevant times herein, Defendants held themselves and their institutions out to be safe places for religious worship, spiritual development, and growth, learning and education, and engaging in youth and/or community activities.

33. Defendants explicitly and implicitly represented to Plaintiff, her parents, and the community, that all of its educators and staff members, including Father Campbell, were

4

benevolent and trustworthy stewards of the faith who would only act in the best interests of the children whom they served and granted Father Campbell unfettered access to the minor children attending the school, including Plaintiff.

34. Defendants had and/or assumed a duty to provide a reasonably safe environment for Plaintiff and assumed the duty to protect and care for her.

35. Pursuant to common law and the Restatement (Second) of Agency, § 219, Father Campbell was acting as the agent of Defendants because while engaging in the wrongful acts with Plaintiff, Father Campbell was in the course and scope of his employment acting as a priest and educator of Plaintiff and with Defendants; and/or was able to accomplish the sexual abuse because of his job-created authority and role as an agent of the Defendant.

36. As such, Defendants are vicariously liable for the acts of Father Campbell through the doctrine of *respondeat superior,* in addition to their direct liability described here and below.

37. Defendants knew, or should have known, that there was an unreasonable risk of harm to children at St. Mary's, like Jeanne, to whom Father Campbell was provided access by Defendants.

38. Defendants knew that the Catholic schools and the Roman Catholic Church generally, had a long history of employees and/or agents who had sexually molested children.

39. Defendants created a foreseeable risk of harm to Plaintiff.

40. As a minor child being educated at St. Mary's and participating in the programs and activities Defendants offered to minors, Plaintiff was a foreseeable victim.

41. As a minor child who Father Campbell had access to through Defendants' school, facilities, and programs and who looked at Father Campbell as a priest and person of authority, Plaintiff was a foreseeable victim.

42. Defendants owed a duty of care to all minor persons, including Plaintiff, who were likely to come within the influence or supervision of Father Campbell in his role as priest, employee, agent, and/or servant.

43. Pursuant to Restatement (Second) of Torts, § 317, Defendant had a duty, as master of Father Campbell, to exercise reasonable care to control Father Campbell while he was on Defendant's premises, that is, St. Mary's, and accompanying grounds, even when acting outside the scope of their employment, to prevent Father Campbell from intentionally harming others, including Plaintiff.

44. Defendants accepted responsibility for well-being of Plaintiff as a minor child.

45. As such, Defendants had a duty to provide the type of care required of one who requests to be entrusted with the responsibility of caring for children.

46. Defendants owed duties to Plaintiff arising from the relationship akin to that of a student-school, and/or parishioner-priest, and thus, Defendants were required and obligated to protect the children on the tutelage, including Plaintiff.

47. Such duties include, but are not limited to, a duty to provide safe care, custody, and control of minor children, including Plaintiff, a duty to warn or and report to the proper authorities the deviant propensities of Father Campbell, and ultimately to prevent sexual, physical, and mental abuse of all minors within their care, control and/or custody, including Plaintiff.

48. Father Campbell's forcible sexual acts on Plaintiff sere performed in the course and scope of his delegated duties and authorities granted by Defendants.

49. Defendants, their agents, employees, servants, and licensees, including vicariously through employee, Father Campbell, breached its duties of care owed to Plaintiff, including, *inter alia*:

a. failing to investigate the background and/or history of Father Campbell before placing him into close contact with minor, including, Plaintiff;

b. failing to warn Plaintiff, her parents and/or legal guardians, of Father Campbell's conduct and/or the reasonably foreseeable risk of future harm, despite Defendant having actual or constructive knowledge of Father Campbell sexually abusing children, having the propensity to sexually abuse children, and/or posing as a threat of abuse to children;

c. permitting and/or directing Father Campbell to have private contact with minor Plaintiff despite having constructive or actual knowledge of Father Campbell sexually abusing children, and/or posing as a threat of sexual abuse to children;

d. minimizing, ignoring, and/or excusing the misconduct of Father Campbell as described herein, which allowed such conduct to continue;

e. failing to provide a safe environment to Plaintiff within the schools, churches, and rectories that they operated and/or owned;

f. failing to conduct a reasonable investigation of abuse complaints;

g. failing to create, institute, and/or enforce rules, policies, procedures, and/or regulations to identify and/or prevent the sexual abuse of children;

h. failing to create, institute, and/or enforce rules, policies, procedures, and/or regulations to prevent Father Campbell's sexual abuse of Plaintiff; and

i. failing to exercise reasonable care to control Father Campbell to prevent his sexual abuse of Plaintiff while on Defendants' premises.

50. In the above ways, amongst others, Defendants failed to exercise the degree of care that a reasonably prudent person would have exercise under similar circumstances thereby breaching its duties owed to Plaintiff.

51. As a direct and proximate result of the above mentioned breaches of duty by Defendants and their agents, servants, workers, or employees and/or others, including but not limited to Father Campbell, for whose acts or omissions they are responsible, and those whose identities are in the exclusive control of Defendants, Plaintiff experienced and suffered from sexual abuse at the hands of Father Campbell, as well as the ensuing physical mental, and financial injuries and damages discussed herein, which Plaintiff still continues to suffer.

52. As a direct and proximate result of Defendants' foregoing acts and omissions, as described herein, Plaintiff sustained both physical and emotional injuries, including, humiliation, embarrassment, loss of self-esteem, disgrace, guilt and shame; loss of faith and mistrust of the education system, school, teachers, coaches, the Roman Catholic Church, and their agents and institutions; injuries suffered at the time of the sexual abuse including physical shock to the nervous system and emotional distress; pain and suffering; severe mental anguish and trauma, necessitating psychiatric and medical care and treatment in the past, present and/or in the future; physical ailments, including, but not limited to headaches, nausea, mental anguish, anxiety and loss of sleep; loss of earnings and earning capacity during those periods. Plaintiff was unable to unable to sustain a previous marriage as a result of the abuse, and grievous bodily pain and suffering, mental anguish, inconvenience, and loss of enjoyment of life, in an amount that exceeds the jurisdictional limits of all courts that may otherwise have jurisdiction.

53. Defendants' acts and omissions were a foreseeable, direct, and proximate cause of the occurrence of Plaintiff's resulting injuries and damages therefrom.

54. By reason of the foregoing, Plaintiff is entitled to recover all of her damages from Defendant, the amount of which exceeds the jurisdictional limits of all lower Courts.

## SECOND CAUSE OF ACTION
## NEGLIGENT TRAINING/SUPERVISION/RETENTION

55. Plaintiff incorporates all consistent paragraphs of this Complain as if fully set forth under this count.

56. Father Campbell was employed by St. Mary's and was under St. Mary's direct supervision, employ, and control when he committed the wrongful acts alleged herein. Father Campbell engaged in the wrongful conduct while acting in the course and scope of his employment with St. Mary's and/or accomplished the sexual abuse by virtue of his job-created authority.

57. Defendants, through their employees and agents, had a duty arising from their employment of Father Campbell, to ensure that he did not sexually molest and abuse children in their care and/or on their premises.

58. Defendant owed a duty to train and educate employees and administrators and establish adequate and effective policies and procedures calculated to detect, prevents, and address inappropriate behavior and conduct between its employees and the children under their care.

59. Defendants breached their duties to instruct, train and supervise their employees, in that Defendants failed to exercise the degree of care that a reasonably prudent person would have exercised under similar circumstances, including, *inter alia*:

    a. Failing to timely and properly education, train, supervise, and/or monitor their gents or employees with regard to policies and procedures that should be followed when sexual abuse of a child is suspected or observed

b. Failing to timely and properly educate, train, supervise, and/or monitor their agents or employees with regard to policies and procedures that should be followed to detect and/or prevent sexual abuse of a child;

c. failing to supervise, monitor, and/or investigate Father Campbell in his interactions with children when Defendant knew or should have known that such supervision was necessary;

d. failing to train employees on rules, policies, procedures, and/or regulations to prevent Father Campbell's sexual abuse of Plaintiff;

e. failing to properly supervise Father Campbell such that the opportunity for repeated, unfettered private access to Plaintiff would not be available; and

f. failing to take reasonable steps to remove Father Campbell from the types of duties and circumstances which allowed him the opportunity to continue sexually abusing minors, including Plaintiff.

60. Defendants breached their legal duty of care owed to Plaintiff as a student of St. Mary's.

61. Defendants breached their duty in failing to adequately evaluate, and qualify Father Campbell, both pre- and post-hiring, and failed to monitor, supervise influence, control, discipline, or discharge Father Campbell and/or report Father Campbell to criminal authorities and/or parents or otherwise restrict his movement and/or activities to ensure the safety of the children at St. Mary's specifically Plaintiff in the ways discussed herein.

62. Defendants and their agents and/or employees, knew, or should have known of Father Campbell's deviant sexual proclivities, propensities and/or criminal misconduct prior to employing or placing Father Campbell in positions of trust with minors.

63. Unfortunately, Defendants placed and maintained Father Campbell in positions of trust and control with access to children, which ultimately led Father Campbell to access and harm Plaintiff.

64. Defendants, after placing Father Campbell, and with suspected knowledge of the abuse, negligently retained Father Campbell in a position where he had access to children and could foreseeably cause harm which Plaintiff would not have been subjected to had defendants exercised reasonable care.

65. In failing to timely remove Father Campbell from working with children, Defendants failed to exercise the degree of care that a reasonably prudent person would have exercised under similar care.

66. As a direct and proximate result of the foregoing acts and omissions by Defendants, Plaintiff sustained both physical and emotional injuries, including, humiliation, embarrassment, loss of self-esteem, disgrace, guilt and shame; loss of faith and mistrust of the education system, school, teachers, priests, the Roman Catholic Church and their agents and institutions; injuries suffered at the time of the sexual abuse including physical shock to the nervous system and emotional distress; pain and suffering; severe mental anguish and trauma, necessitating psychological and medical care and treatment in the past, present and/or in the future; and grievous bodily pain and suffering, mental anguish, inconvenience and loss of enjoyment of life, in an amount that exceeds the jurisdictional limits of all lower Courts that may have jurisdiction.

67. Defendants' acts and omissions were a foreseeable, direct, and proximate cause of the occurrence and Plaintiffs resulting injuries and damages therefrom.

68. By reason of the foregoing, Plaintiff is entitled to recover all of her damages from Defendants, the amount which exceeds the jurisdictional limits of all lower Courts.

**THIRD CAUSE OF ACTION**
**GROSS NEGLIGENCE**

11

69. Plaintiff incorporates all consistent paragraph of this Complaint as if fully set forth herein.

70. Defendants' acts and omissions, as previously described, were committed with reckless disregard for, and with willful, wanton, and conscious indifference to, the rights, safety, and welfare of Plaintiff and the general public.

71. The nature of Defendants' aforesaid wrongful acts and omissions were of such a nature as to constitute gross negligence and malice.

72. Defendants undertook a continuous course of action in the form of conscious decisions, with subjective knowledge and awareness of the risks and hazards presented by each decision as discussed above and incorporated herein, to expose Plaintiff and others to sexual abuse and/or sexual assault by Father Campbell, and without exercising slight care or diligence.

73. Defendants had a duty to exercise reasonable care in relation to the safety and welfare of their minor students, including Plaintiff.

74. Defendants had a duty to exercise reasonable care and avoid creating and maintaining unreasonable risks to the safety and welfare of the children enrolled in their school, including Plaintiff.

75. Defendants had a duty to exercise reasonable care in investigating and pursuing suspicions of criminal conduct, sexual misconduct, and violations of law against the children enrolled in their school, including Plaintiff.

76. In addition to the common law duty of ordinary care discussed above, and incorporated herein, Defendants had a duty that arose because of, *inter alia*, a special relationship between the school and the minor students attending the school.

77. St. Mary's agreed to educate, care for, and keep safe the minor students in exchange for tuition, for which Defendants accepted to fund and promote their school and initiatives.

78. Defendants breached their duty of care by acting with reckless disregard for the safety and welfare of Plaintiff and other innocent children by failing to properly investigate and report the suspected and tolerated pedophile activities of their educators/priests, including those of Father Campbell, and by placing its own person interest in front of the safety of the children enrolled in their school, including Plaintiff.

79. Defendants were more concerned with its reputation than protecting children including Plaintiff. Such conduct was, and is, wanton and willful, reckless, and conscious disregard for the safety of innocent children, including Plaintiff.

80. Defendants' foregoing acts and omissions, involved reckless disregard of or indifference to an extreme degree of mental, and psychological risk and danger, considering the probability and magnitude of the potential a harm to others.

81. Defendants' foregoing gross negligence was foreseeable, direct, and proximate cause of the occurrence and Plaintiff's injuries and damages therfrom.

82. As a direct and proximate result of the Defendants' acts and omissions, Plaintiff suffered sexual abuse at the hands of Father Campbell, as well as ensuing physical, mental, and financial injuries and damages discussed herein, which Plaintiff still continues to suffer.

83. That by reason of the foregoing, Plaintiff is entitled to recover all of her damages from Defendants.

84. As a direct and proximate result of such violations, Plaintiff suffered the injuries and damages described herein.

**FOURTH CAUSE OF ACTION**
**ASSAULT AND SEXUAL ASSAULT OF A CHILD**

85. Plaintiff incorporates all consistent paragraphs of this Complaint as if fully set forth herein.

86. At all relevant times, Father Campbell was under the supervision of administration of Defendants.

87. Father Campbell was imbued with delegated authority from Defendants and Defendants are responsible for the sexual assault on Plaintiff by Father Campbell

88. Defendants' agency and priest, Father Campbell, engaged in sexual assault of a minor for which Defendants are liable under civil law.

89. Defendants aided, abetted, and assisted before and after the fact to allow Father Campbell to engaged in such behavior, and Defendants ratified Father Campbell's conduct by failing to do anything about it.

90. Defendants' acts and/or omissions were a proximate cause of Plaintiff's injuries and damages, and by operation of law, Defendants are liable for that conduct of those damages

## FIFTH CAUSE OF ACTION
## PREMISES LIABILITY

91. Plaintiff incorporated all consistent paragraphs of this Complaint as if fully set forth herein.

92. At all relevant times, Defendants owned and occupied the school/church property upon which the assaults on Plaintiff occurred.

93. Further, Defendants controlled the school/church premises where Plaintiff was assaulted.

94. At all relevant times, Plaintiff was an invitee at the school/church premises where she was assaulted.

95. Defendants provided inadequate security and supervision over the premises despite the existence of unreasonable risk of harm from abusive personnel at the school/church.

96. The risk of harm was foreseeable, and Defendants knew or had reason to know that abuse of minors would occur given previous abuse, proximity of other abuse, the recency of other abuse,

frequency of abuse, the similarity of other abuse, and their actual knowledge of this abuse by teachers, coaches, priests, and other personnel at Roman Catholic schools and churches.

97. The above acts or omissions by Defendants were a proximate cause of Plaintiff's injuries and the resulting damages Plaintiff seeks in this suit.

## SIXTH CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY

98. Plaintiff incorporates all consistent paragraphs of this Complaint as if fully set forth.

99. At all relevant times, Plaintiff had a special relationship with Defendant arising from her attending the Defendants' school, and participation in the Defendants' church.

100. Plaintiff was a minor at all relevant times and Defendants were acting *in loco parentis* in charge of Plaintiff's well being.

101. This relationship was rooted in a moral, social, religious, or personal relationship of trust and confidence between the Plaintiff and Defendants.

102. Defendants had a dominance over Plaintiff who was defendant on defendant's control and Plaintiff reasonably relied on Defendants to act in her best interest.

103. This special relationship gave rise to a fiduciary relationship.

104. Further, at all relevant times, Jeanne had a special relationship with Defendants arising from their status as an education and religious institution.

105. Entrusted with special privileges and immunities, Defendants demanded complete loyalty, fealty, and trust from individuals like Jeanne and specifically instructed individuals like Jeanne such that they are granted with special power to determine right and wrong.

106. This extreme power imbalance mandated that Jeanne place an extreme degree of trust and confidence in Defendants to act as an advisor and determine what is in her best interest.

107. This psychological power over Jeanne caused her to justifiably and indeed mandated that she rely on the commands of Defendants, by and through its teachers, coaches, nuns, and priests.

108. Given the existence of their status as a fiduciary over Jeanne, Defendants owed Jeanne the highest duty of care at law, including but not limited to: (1) duty of loyalty and utmost good faith; (2) duty of candor; and (3) duty to act with integrity of the strictest kind; and (4) duty of full disclosure.

109. Defendants breached their fiduciary duties by, among others, hiding and keeping secret the fact that there were persons at the school to whom Jeanne would be subjected that engaged in sexual abuse of minors, by failing to disclose both before and after the events at issue in this case Defendants' knowledge of the abuse and the abuser, failing to disclose the policy of covering-up past incidents of abuse, and putting the interest of Defendants ahead of students and victims like Jeanne by continuing to this day to hide the full extent of the problem.

110. These breaches cause harm to Jeanne and benefitted Defendants who sought to protects its reputation from public knowledge of the rampant misconduct occurring at its school/church.

111. The above acts or omissions by these Defendants were a proximate cause of Plaintiff's injuries and the resulting damages Plaintiff seeks in this suit. Plaintiff prays that, following a verdict, all such damages be awarded against Defendants.

## SEVENTH CAUSE OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

112. Plaintiff incorporates all consistent paragraphs of this Complaint as if fully set forth.

113. Father Campbell's sexual abuse of Plaintiff was extreme and outrageous conduct, beyond all possible bounds of decency, atrocious and intolerable in a civilized world.

114. Defendants' aforesaid negligent, grossly negligent, and reckless misconduct endangers Plaintiff's safety and caused Plaintiff to fear for her safety.

115. Defendants knew or disregarded the substantial probability that Father Campbell would cause severe emotional distress to minors including Plaintiff.

116. As a direct proximate result of Defendants' foregoing misconduct, Plaintiff suffered severe emotional distress including psychological and emotional injury as described above.

117. By the reason of the foregoing, Defendants are liable to Plaintiff for compensatory and punitive damages in an amount in excess of $75,000 to be determined at trial, plus interest and costs.

## EIGHTH CAUSE OF ACTION
## BREACH OF DUTY *IN LOCO PARENTIS*

118. Plaintiff incorporates all consistent paragraphs of this Complaint as if fully set forth.

119. At all relevant times, Plaintiff was a vulnerable child and student entrusted to the care of Defendants and was under the supervision and control of Defendants, such that Defendants owed her a duty to act *in loco parentis* and to prevent foreseeable injuries.

120. By reason of the foregoing, Defendants breached their duties to act *in loco parentis*.

121. As a direct and proximate result of Defendants' foregoing acts and/or omissions, Plaintiff suffered injury including the physical and psychological damages as described below.

122. By reason of the foregoing, Defendants are liable to Plaintiff for compensatory and punitive damages in an amount in excess of $75,000 to be determined at trial, plus interest and costs.

## NINTH CASUE OF ACTION
## BREACH OF STATUTORY DUTIES TO REPORT

123. Plaintiff incorporates all consistent paragraphs of this Complaint as if fully set forth.

124. Pursuant to N.Y. Soc. Serv. Law § § 413 and 420, Defendants had a statutory duty to report reasonable suspicion of abuse of children in their care.

125. Defendants breached their statutory duty by knowingly, willfully, and intentionally failing to report reasonable suspicion of sexual abuse by Father Campbell.

126. As a direct and proximate result of Defendants' foregoing acts and omissions, Plaintiff suffered injury, including the physical and psychological damages as described below.

127. By reason of the foregoing, Defendants are liable to Plaintiff for compensatory and punitive damages in the amount in excess of $75,000 to be determined at trial, plus interest and costs.

## **DAMAGES**

128. As a direct and proximate result of the foregoing acts and/or omissions of Defendants, Plaintiff suffered the injuries and damages described herein.

   a. Past, present and future conscious pain, and suffering;

   b. Past, present and future mental anguish, and emotional distress;

   c. Past, present and future medical expenses;

   d. Compensatory damages;

   e. Punitive damages;

   f. Litigation costs, expenses, and reasonable and necessary attorney fees;

   g. Litigation costs, expenses, and reasonable and necessary attorney fees;

   h. Pre-judgment and post-judgment interest pursuant to 28 U.S.C. § 1961 and any other applicable law or statute; and

   i. Any and all other damages to which Plaintiff may be justly entitled

## **PRAYER FOR RELIEF AND JURY DEMAND**

129. **WHEREFORE,** based on the foregoing causes of action, Plaintiff demands judgment against Defendants in an amount to be determined in a trial by jury; for a sum that will fully and fairly compensate Plaintiff for her injuries and conscious pain and suffering, that Plaintiff recovers

actual damages; that Plaintiff is entitled to recover compensatory damages; that Plaintiff recovers punitive damages; together with litigation costs, expenses and reasonable and necessary attorneys' fees, pre-judgment and post-judgment interest pursuant to 28 U.S.C. § 1961 and any other applicable law or statute; and any and all other relief to which Plaintiff may be justly entitled.

130. Plaintiff demands a trial by jury on all issues so triable.

Respectfully Submitted,

*/s/ Ashley Pileika*
Ashley M. Pileika
New York Bar No. 974605

Darren Wolf*
Texas State Bar No. 24072430
**Law Office of Darren Wolf, P.C.**
1701 N. Market St., Suite 210
Dallas, Texas 75202
P: 214-346-5355 | F: 214-346-5909
darren@darrenwolf.com
*Pro hac vic application forthcoming