**KELLEY DRYE & WARREN LLP**

NEW YORK, NY   WASHINGTON, DC   CHICAGO, IL   HOUSTON, TX
LOS ANGELES, CA   SAN DIEGO, CA   PARSIPPANY, NJ   STAMFORD, CT

Randall L. Morrison Jr.
3 World Trade Center
175 Greenwich Street
New York, NY 10007

Tel:  (212) 808-7544
Fax: (212) 808-7897
RMorrison@KelleyDrye.com

June 9, 2023

**By ECF**
Hon. Cheryl L. Pollak, U.S.M.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *Jeanne L. LaFrantz v. Diocese of Brooklyn, et al.*;
                Case No. 21-cv-04920-DLI-CLP

Dear Judge Pollak:

      We represent defendant The Roman Catholic Diocese of Brooklyn, New York (the "Brooklyn Diocese") in the referenced matter.  Pursuant to the Court's May 19, 2023 electronic order, we write to outline the bases of the Brooklyn Diocese's redactions in Father John F. Campbell's clergy file based on First Amendment protections.  The Brooklyn Diocese has redacted a total of eight lines over three pages of Father Campbell's clergy file that reference confidential assessments of Father Campbell's fitness for ordination as a Roman Catholic priest.[1]  *See* JFC000030, JFC000033, JFC000034.  "Ordination" is a religious exercise, and whether a person possesses the qualities for ordination are religious questions.  For reasons set forth below, the First Amendment protects these eight lines from disclosure.

      Plaintiff argues that the Brooklyn Diocese "breached [its] duty in failing to adequately evaluate, and qualify Father Campbell, both pre- and post-hiring[.]"  Amended Complaint (ECF 28), ¶89.  But "ordination" is not "hiring," because ordaining a priest is not "employment."  There is no such general obligation that civil courts can enforce with respect to ordination.  Courts are prohibited from delving into evaluations of fitness for ordination; thus, such assessments within Father Campbell's clergy file are plainly not discoverable under FRCP 26(b)(1).[2]

---

[1] As reflected in its privilege log, the Brooklyn Diocese also redacted confidential personal information in two other portions of Father Campbell's clergy file under FRCP 5.2.  Plaintiff does not challenge those redactions.

[2] Under the Federal Rules, a party is only able to obtain discovery that is "relevant to any party's claim or defense and proportional to the needs of the case[.]"  Fed. R. Civ. P. 26(b)(1).  Thus, parties are permitted to object to producing (and redact accordingly) information that bears no relevance to the issues in this litigation.

Magistrate Judge Cheryl L. Pollak
June 9, 2023

      The freedom to evaluate and select clergy is protected from state interference under the "church autonomy doctrine." The Second Circuit has held that "religious associations have independence in matters of faith and doctrine and in closely linked matters of internal government." *Belya v. Kapral*, 45 F.4th 621, 630 (2d Cir. 2022). The church autonomy doctrine is a "mechanism limiting secular courts' intrusion into the employment decisions of religious institutions[.]" *Butler v. St. Stanislaus Kostka Cath. Acad.*, 609 F. Supp. 3d 184, 191 (E.D.N.Y. 2022). Allowing secular courts to review ecclesiastical governance "subverts the rights of religious associations to retain independence in matters of faith, doctrine, and internal government." *Belya,* 45 F.4th at 630. The First Amendment protects a church's "autonomy with respect to internal management decisions that are essential to the institution's central mission." *Spencer v. Nigrelli*, 2022 WL 17985966, at *9 (W.D.N.Y. Dec. 29, 2022). Such autonomy would be violated if the Brooklyn Diocese is compelled to reveal its internal assessments of Campbell's fitness for ordination.

      The "ministerial exception," which instructs courts to refrain from interfering with a religious group's determination of "who is qualified to serve as a teacher or messenger of its faith," is derived from the church autonomy doctrine. *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 202 (2012). "Religious autonomy means that religious authorities must be free to determine who is qualified to serve in positions of substantial religious importance." *Id.* at 200. The purpose of the exception is to "ensure that the authority to select and control who will minister to the faithful—a matter strictly ecclesiastical—is the church's alone." *Id.* at 194–95.

      The Brooklyn Diocese properly redacted portions of Father Campbell's clergy file that discuss internal church assessments of Campbell's fitness for ordination because ordination of a priest is a "quintessentially religious" matter, "whose resolution the First Amendment commits exclusively to the highest ecclesiastical tribunals of this hierarchical church." *Serbian E. Orthodox Diocese for U. S. of Am. & Canada v. Milivojevich*, 426 U.S. 696, 720 (1976); *see also Kenneth R. v. Roman Cath. Diocese of Brooklyn*, 229 A.D.2d 159, 162 (1997) ("Ordination to the priesthood confers a religious, not legal status, and may be characterized as a 'quintessentially religious' matter."). To allow such portions of Father Campbell's clergy file to be discoverable in this proceeding would interfere with the Brooklyn Diocese's internal governance and would improperly infringe the Brooklyn Diocese's authority to ordain its priests.

      Courts have long enforced the limitations imposed by the First Amendment on discovery of internal ecclesiastical documents. *See, e.g., Rayburn v. Gen. Conf. of Seventh-Day Adventists*, 772 F.2d 1164, 1171 (4th Cir. 1985) (First Amendment violation may result where "Church personnel and records would inevitably become subject to subpoena [and] discovery"); *Surinach v. Pesquera De Busquets*, 604 F.2d 73, 78 (1st Cir. 1979) (order compelling the production of internal church documents unconstitutional); *McRaney v. North Am. Mission Bd. of the S. Baptist Convention, Inc.*, 2018 WL 5839678 (N.D. Miss. Nov. 7, 2018) (quashing subpoena which sought documents related to religious group's employment decision on grounds that subpoena improperly interfered with the employment relationship between a religious institution and its

Magistrate Judge Cheryl L. Pollak
June 9, 2023

minister); *see also N.Y. State Senate Republican Campaign Comm. v. Sugarman*, 165 A.D.3d 1536, 1540 (3d Dep't 2018). Redactions are also appropriate where, as here, the material is irrelevant. *See, e.g., Schiller v. City of New York*, 2006 WL 3592547 at *7 (S.D.N.Y. Dec.7, 2006); *Strategic Growth Int'l, Inc. v. RemoteMDX, Inc.*, 2007 WL 3341522, at *2 (S.D.N.Y. Nov. 9, 2007) (conducting in camera review and allowing irrelevant material to remain redacted); *Bear Creek Cranberry Co., LLC v. Cliffstar Corp.*, 2011 WL 2882078, at *3 (W.D.N.Y. July 15, 2011; *Cohen v. Cohen*, 2015 WL 4469704, at *6 (S.D.N.Y. June 29, 2015). Accordingly, the redactions at issue are proper as both privileged under the First Amendment and as irrelevant under FRCP 26(b)(1).

Plaintiff argues that she should be able to view these sections of Campbell's clergy file to challenge the Brooklyn Diocese's defense that it had no notice of Campbell's alleged propensity to commit child sexual abuse or knowledge of any prior acts of abuse. Whether a person possesses the necessary qualities for ordination is a different question. Plainly, none of the redactions made to Father Campbell's clergy file based on First Amendment grounds even remotely address those issues.

For the foregoing reasons, the Brooklyn Diocese respectfully requests that the Court maintain its redactions based on the First Amendment.

Thank you for your attention to this matter.

Respectfully,

*[signature]*

Randall L. Morrison Jr.

cc: Counsel for all parties (via ECF)