UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JEANNE LAFRANTZ,

                Plaintiff,

-against-

ST. MARY'S ROMAN CATHOLIC CHURCH,
DIOCESE OF BROOKLYN,

                Defendants.

**MEMORANDUM & ORDER**

**21-CV-04920 (NGG) (CLP)**

NICHOLAS G. GARAUFIS, United States District Judge.

Jeanne L. LaFrantz ("Plaintiff" or "Ms. LaFrantz") brought this action against St. Mary's Roman Catholic Church ("St. Mary's") and The Roman Catholic Diocese of Brooklyn (the "Brooklyn Diocese") (collectively, the "Defendants") under the New York Child Victims Act ("CVA"), 2019 N.Y. Sess. Laws c. 11, § 3, as a result of sexual abuse she suffered as a minor at the hands of the Defendants' employee, Father John F. Campbell ("Campbell"). Both Defendants separately move to dismiss Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

For the reasons set forth below, Defendants' motions are GRANTED in part and DENIED in part.

## I. BACKGROUND[1]

Plaintiff alleges that from approximately 1960 to 1966, she was subjected to sexual abuse by Father Campbell, a diocesan priest

---

[1] The following facts are taken from the First Amended Complaint and, for the purposes of this motion to dismiss, are assumed to be true. *See Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 349 (2d Cir. 2022). In response to supplemental authority filed by the Brooklyn Diocese (Dkts. 44, 46), Plaintiff submitted a response in support of her FAC (Dkt.

1

who was employed by Defendants to work at St. Mary's. (First Am. Compl. ("FAC") (Dkt. 28) ¶¶ 3-5, 15.)

According to the FAC, Campbell began abusing Plaintiff when she was in sixth grade and approximately ten years old. (*Id.* ¶ 19.) At the time the abuse began, Plaintiff's father was sick with terminal cancer, and Campbell began providing "spiritual guidance" as well as financial support to Plaintiff's mother. (*Id.* ¶¶ 22-23.) While Plaintiff's mother tended to Plaintiff's ill father, Plaintiff was entrusted to the Defendants and Campbell's care. (*Id.* ¶ 24.)

Plaintiff alleges, however, that Campbell was a "regularly . . . touchy man" with students at St. Mary's, including Plaintiff. (*Id.* ¶ 27.) Campbell would lure Plaintiff to St. Mary's rectory "under the guise of needing [Plaintiff] to run errands for him." (*Id.* ¶ 28.) Plaintiff frequented the rectory so often that the housekeeper allowed Plaintiff to take a shorter route through the kitchen and a back passageway. (*Id.* ¶¶ 34-36.) Plaintiff alleges that she often passed other priests and visitors who sat in the communal areas of the rectory and watched her walk to Campbell's "private area" which consisted of an office, pantry, couch, television, and bed. (*Id.* ¶¶ 37-40.) Once alone, Plaintiff alleges that Campbell would sexually abuse her, instruct her not to tell anyone about their encounters, and send her off with $2-5. (*Id.* ¶¶ 41-48.) Plaintiff asserts this abuse occurred three to four times a week and coincided with changes in her behavior at school. (*Id.* ¶ 30.) Plaintiff alleges that her teacher, Sister Mary Anselm, noticed how much time Plaintiff was spending alone with Campbell and rather than prevent the abuse, Sister Anslem warned Plaintiff that if she "continued on the path she was on" and her "behavior" did not

---

47), which is not properly before the court on this motion to dismiss, and whose consideration would require the court to convert the motion to a motion for summary judgment and allow an opportunity for discovery. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002).

improve, she would "end up in jail." (*Id.* ¶¶ 29, 32-33.) Plaintiff recalls the abuse continuing for six years and only stopping when she left St. Mary's to attend high school. (*Id.* ¶ 49.)[2]

During freshman year of high school at Mater Christi Diocesan High School, Plaintiff disclosed the sexual abuse by Campbell while in confessional. (*Id.* ¶¶ 51-52.) The school's priest did not believe Plaintiff and told her that she was "shameful" and "would go to Hell" for the lie she told. (*Id.* ¶ 54.) Plaintiff asserts she never spoke of the abuse again, fearful that she would be expelled and bring shame on her mother. (*Id.* ¶ 55.)

## II. PROCEDURAL HISTORY

On August 13, 2021, Plaintiff commenced this action by filing her Complaint in the Southern District of New York. (*See* Complaint (Dkt. 1).) Following transfer to this court, Plaintiff filed an amended complaint. (*See generally* FAC.) The FAC alleges five causes of action against Defendants: (i) negligence, (*id.* ¶¶ 59-82); (ii) negligent training, supervision, and retention, (FAC ¶¶ 83-95); (iii) gross negligence, (*id.* ¶¶ 96-111); (iv) premises liability, (*id.* ¶¶ 112-18); (v) and breach of fiduciary duty, (*id.* ¶¶ 119-32). On June 27, 2022, Defendants moved to dismiss Plaintiff's FAC pursuant to Federal Rule of Civil Procedure 12(b)(6). (St. Mary's Not. of Mot. to Dismiss (Dkt. 36); St. Mary's Mem. in Supp. of Mot. to Dismiss ("St. Mary's Mot.") (Dkt. 36-1) at 1; Brooklyn Diocese's Not. of Mot. (Dkt. 40); Brooklyn Diocese's Mem. in Supp. of Mot. ("Brooklyn Diocese's Mot.") (Dkt. 40-4) at 1.) Plaintiff submitted an Opposition, (Opp. (Dkt. 41)) and

---

[2] The court notes that, as a factual matter, Plaintiff alleges the abuse began when she was ten years of age and continued for six years. (*Id.* ¶¶ 19, 49.) This suggests that the abuse continued until she was sixteen and in the twelfth grade or senior year of high school (assuming she did not repeat or skip grades). Plaintiff alleges, however, that the abuse stopped when she left to attend high school. (*Id.* ¶ 49.) The court notes this inconsistency for the record.

Defendants filed Replies in support of their motions to dismiss. (St. Mary's Reply (Dkt. 39); Brooklyn Diocese's Reply (Dkt. 42).)

### III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[3] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Plausibility depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011). In deciding a motion to dismiss, the court will accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013). However, allegations that "are no more than conclusions [ ] are not entitled to the assumption of truth." *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). Thus, "at a bare minimum, the operative standard requires the plaintiff to provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Goldstein v. Pataki*, 516 F.3d 50, 56-57 (2d Cir. 2008).

---

[3] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

4

## IV. DISCUSSION

### A. Group Pleading

As a threshold matter, Defendant Brooklyn Diocese argues that Plaintiff's First Amended Complaint fails to comply with Federal Rule of Civil Procedure 8 because it does not distinguish the acts of each Defendant. (Brooklyn Diocese's Mot. at 6-7.) Plaintiff asserts that she has properly alleged that the Defendants acted in unison and are jointly liable for the conduct of Father Campbell. (Opp. at 5-7.)

Rule 8 requires a complaint to give each defendant "fair notice of the grounds for entitlement to relief." *Twombly*, 550 U.S. at 561. "A complaint generally fails to meet that minimum requirement where allegations lump all the defendants together in each claim and provide no factual basis to distinguish their conduct." *Gomez-Kadawid v. Lee*, No. 20-CV-01786 (VEC) (DF), 2022 WL 676096, at *6 (S.D.N.Y. Feb. 3, 2022), *report and recommendation adopted*, No. 20-CV-1786 (VEC) (DF), 2022 WL 558125 (S.D.N.Y. Feb. 24, 2022).

Here, the Brooklyn Diocese asserts that Plaintiff overlooks the fact that it is a separate legal entity from St. Mary's and fails to specify which Defendant engaged in what misconduct. (Brooklyn Diocese's Mot. at 6.) Tellingly, of the six times the Brooklyn Diocese is mentioned in the First Amended Complaint, none of them are within the "Facts Common to All Counts" section, but rather in sections describing the nature of the claim, the parties, and the causes of action. (*See* FAC ¶¶ 1, 10-11, 60, 84, 104.)

While true that "nothing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant," *New York Am. Water Co., Inc. v. Dow Chem. Co.*, No. 19-CV-2150 (NG), 2020 WL 9427226, at *4 (E.D.N.Y. Dec. 11, 2020), the rule requires, "at a minimum, that a complaint give each defendant fair

5

notice of what the plaintiff's claim is and the ground upon which it rests." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (Summary Order).

The Brooklyn Diocese argues that Plaintiff's First Amended Complaint improperly conflates the Defendants without specifying which Defendant engaged in which acts. (*See* Brooklyn Diocese Mot. at 6.) While the court notes that Plaintiff could have alleged in greater detail conduct specific to each Defendant, the court cannot conclude that Plaintiff's complaint failed to give any notice to the Defendants. In particular, Plaintiff alleges in her complaint that Campbell was a diocesan priest employed by St. Mary's and "under Defendants' direct supervision, employ, and control when he committed the wrongful acts." (FAC ¶¶ 5, 84.)

Thus, while vague, the group pleading alone does not rise to the level of a Rule 8 violation sufficient to dismiss the First Amended Complaint in its entirety at this stage. *See Vantone Grp. Liab. Co. v. Yangpu NGT Indus. Co.*, No. 13-CV-7639 (LTS), 2015 WL 4040882, at *4 (S.D.N.Y. July 2, 2015) (noting that the test for Rule 8 pleading is "simply whether Defendants have received adequate notice of the claims"). Drawing all reasonable inferences in Plaintiff's favor, the court declines to dismiss the First Amended Complaint on group pleading grounds and considers the Brooklyn Diocese and St. Mary's as joint employers for purposes of this motion. The court now turns to the merits.

### B. Negligence

"To establish a prima facie case of negligence under New York law, a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Curtis v. Gates Cmty. Chapel of Rochester, Inc.*, No. 20-CV-06208 (EAW), 2023 WL 1070650, at *2 (W.D.N.Y. Jan. 27, 2023). Plaintiff asserts a negligence claim against both Defendants, alleging they are liable under New York law based on a school-student relationship between the Plaintiff

6

and the Defendants as well Defendants' duty as landowners to keep its premises safe. (FAC ¶¶ 59-82, 115; Opp. at 8-9.)

### 1. Duty Owed

"In New York, schools owe a special duty . . . to students, requiring a school to act when a child, while in its charge, is threatened by the negligence of a third party, and it must make reasonable efforts to anticipate such threats and will be held liable for foreseeable injuries proximately related to the absence of adequate supervision." *Curtis*, 2023 WL 1070650, at *2. Schools are therefore required to "exercise such care of their charges as a parent of ordinary prudence would observe in comparable circumstances." *PC-41 Doe v. Poly Prep Country Day Sch.*, 590 F. Supp. 3d 551, 568 (E.D.N.Y. 2021). And the nature of this duty, often known as the duty of *in loco parentis*, "derives from the simple fact that a school, in assuming physical custody and control over its students, effectively takes the place of parents and guardians." *Mirand v. City of New York*, 84 N.Y.2d 44, 49 (1994).

Likewise, landowners have "a duty to maintain their property in a reasonably safe condition" such that the "foreseeable conduct of third parties on the property [is prevented] from intentionally harming or creating an unreasonable risk of harm to others." *Murray*, 2022 WL 3139116, at *3.

Plaintiff has sufficiently alleged that the Defendants had a duty to Plaintiff *in loco parentis*. Specifically, the First Amended Complaint alleged that the Defendants' duty "arose because of, *inter alia*, a special relationship between the school and the minor students attending the school" and that Defendants "agreed to educate, care for, and keep safe the minor students in exchange for tuition, for which Defendants accepted." (FAC ¶¶ 103-04); *see also Davila v. Orange Cnty.*, 187 N.Y.S.3d 261, 263 (2d Dep't 2023).

The court also finds that Defendants had a duty to Plaintiff by virtue of their status as landowners. Not only did Plaintiff attend school on the Defendants' premises, but Plaintiff alleges that she participated in programs and activities Defendants offered to minors and ran errands for Campbell that included meeting him at the rectory. (FAC ¶¶ 34, 69.) It was therefore reasonable to expect Plaintiff to be on Defendants property—even outside of school or church hours—such that the Defendants owed her a duty. *See C.Q. v. Est. of Rockefeller*, No. 20-CV-2205 (VSB), 2021 WL 4942802, at *6 (S.D.N.Y. Oct. 21, 2021).

2. Breach of Duty and Harm Arising from Breach

Plaintiff alleges that Defendants breached their duties by failing to exercise reasonable care to safely manage the priests under their direction and control who are tasked with educating students and minor parishioners, like the Plaintiff. (FAC ¶¶ 16, 27, 62-63, 75, 78; Opp. at 9.) Specifically, Plaintiff points to ten factual allegations from her First Amended Complaint that, when taken together, allow the court to plausibly infer that Defendants had notice of Campbell's propensities and acts. (*See* Opp. at 10.) For example, Plaintiff alleges that her teacher, Sister Mary Anselm, was "very in tune" with her students and noticed that Plaintiff was spending three to four afternoons a week alone with Campbell, and that this time period coincided with Plaintiff's change in behavior at school. (FAC ¶ 30.) Rather than prevent Father Campbell from sexually abusing her, Sister Anselm only warned Plaintiff that if she did not change her behavior, she would "end up in jail." (*Id.* ¶ 33.) Moreover, Plaintiff claims that she "almost always" passed other priests on the way to see Campbell and instead of conversing with her, the other priests observed Campbell take Plaintiff to his private living quarters which had an office, couch television, bar, and bed. (*Id.* ¶¶ 38-40.) Finally, Plaintiff alleges that "Father Campbell was a regularly—and uncomfortably—touchy man." (*Id.* ¶ 27.) Plaintiff

contends, and this court agrees, that when considered in tandem, these allegations could plausibly suggest that Defendants should have made a reasonable effort to anticipate the threat of abuse by Campbell. (*Id.* ¶ 78.)

Thus, Defendants' failure to anticipate Campbell's abuse, coupled with their failure to warn parents and report his conduct (FAC ¶¶ 76, 78), their failure to prevent Campbell from private "unfettered access" to students like the Plaintiff (*id.* ¶ 62), and their failure to create or enforce procedures to prevent sexual abuse of children (*id.* ¶ 78), plausibly show that the level of supervision and protection provided by Defendants fell below that of an identically situated, ordinarily prudent parent. *See Poly Prep Country Day Sch.*, 590 F. Supp. 3d at 569; *Digiorgio v. The Roman Catholic Diocese of Brooklyn*, No. 520009/2019, 2021 WL 1578326, at *6 (N.Y. Sup. Ct. Apr. 22, 2021) (holding the diocese and parish vicariously liable not for the intentional torts by a priest but for "negligence committed in allowing such abuse to take place when a duty of reasonable care existed to safely manage the subject educational facilities").

Plaintiff has sufficiently alleged that as a result of Defendants' breach and Campbell's abuse, she has suffered severe physical and emotional injuries necessitating psychiatric and medical treatment. (FAC ¶¶ 81-82.) Taking the allegations in Plaintiff's First Amended Complaint as true, the court concludes that Defendants' motions to dismiss are DENIED with respect to Plaintiff's negligence claim.

### C. Negligent Training, Retention, and Supervision

In addition to the standard elements of negligence, a plaintiff alleging negligent training, retention, and supervision must show: "(1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that

9

the tort was committed on the employer's premises or with the employer's chattels." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004).

New York courts have held that in the context of sexual assault allegations, "a plaintiff must in its complaint provide factual allegations concerning the tortfeasor's propensity for sexual assault, as well as factual allegations suggesting that the defendant knew or should have known of any such prior acts by the tortfeasor." *Est. of Rockefeller*, 2021 WL 4942802, at *9; *see also Doe v. Alsaud*, 12 F. Supp. 3d 674, 680 (S.D.N.Y. 2014). And the prior misconduct by the tortfeasor "must be of the same kind that caused the injury." *Alsaud*, 12 F. Supp. 3d at 681.

As with Plaintiff's negligence claim, Plaintiff has sufficiently alleged facts showing Defendants knew or should have known of Campbell's propensities for sexual abuse. *See supra* IV.B.2. But Plaintiff has failed to allege any prior sexual abuse—let alone any prior history at all—on the part of Father Campbell. *See Murray*, 579 F. Supp. 3d at 390 ("[A]n employer is only liable for negligent supervision if the employer is aware of *specific* prior acts or allegations against the employee.") (emphasis in original). The absence of such factual allegations are "fatal" to Plaintiff's claim and "warrant[] dismissal." *Alsaud*, 12 F. Supp. 3d at 680. Defendants' motions to dismiss are GRANTED with respect to Plaintiff's negligent training, retention, and supervision claim.

### D. Gross Negligence

Gross negligence, like ordinary negligence, requires breach of a legal duty. *Curley v. AMR Corp.*, 153 F.3d 5, 13 (2d Cir. 1998). But the alleged conduct must be of an "aggravated character" that "evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing." *Id.*

Plaintiff alleges in her First Amended Complaint that Defendants' acts and omissions were "committed with reckless disregard for,

and with willful, wanton, and conscious indifference to, the rights, safety, and welfare of Plaintiff and the general public," (FAC ¶ 97), particularly where Defendants' agents, including Sister Anselm and other priests and nuns "deliberately turned a blind eye" to Campbell's conduct (Opp. at 12-13). The court disagrees with Plaintiff's contention that Defendants deliberately ignored Campbell's conduct and finds Plaintiff has failed to allege any intentional wrongdoing on the part of the Defendants. Plaintiff's accusations that she was "smuggl[ed]" into a private residence of adult men through a "special passageway" are belied by the fact that Plaintiff concedes that other priests and visitors also frequented the communal areas and hallways of the rectory. (Opp. at 12; FAC ¶¶ 35-39.) Plaintiff admits that she was led by Campbell to his office and suite past these visitors without issue. (FAC ¶ 38.) Similarly, the housekeeper's decision to have Plaintiff use a shorter route to the rectory does not amount to gross negligence where there are no facts alleging that it was improper or abnormal for Plaintiff to run errands or visit Campbell's living quarters and no facts alleging Campbell had a history of inappropriate conduct. While the allegations as pled could support negligence on the part of the Defendants, they do not rise to the level of deliberate indifference. Accordingly, Defendants' motions are GRANTED with respect to Plaintiff's gross negligence claim.

### E. Premises Liability

"Under a theory of premises liability, it is the duty of a property owner to protect plaintiff from foreseeable harm caused by third persons, including its own employees." *Poly Prep Country Day Sch.*, 2022 WL 4586237, at *11. Courts in similar CVA actions have dismissed premises liability claims as duplicative of other tort claims. *See Est. of Rockefeller*, 2021 WL 4942802, at *4; *Poly Prep Country Day Sch.*, 590 F. Supp. 3d at 571; *Fay v. Troy City Sch. Dist.*, 151 N.Y.S.3d 642, 643 (3d Dep't 2021).

11

Here, the "gravamens of [Plaintiff's premises liability claim and negligence claim] are substantially identical." *Sang Lan v. AOL Time Warner, Inc.*, No. 11-CV-2870 (LBS), 2012 WL 1633907, at *2 (S.D.N.Y. May 9, 2012). Plaintiff's assertions that Plaintiff was an invitee at the Defendants' premises where Defendants provided inadequate security and supervision such that the risk of harm was foreseeable (FAC ¶¶ 112-118), fall entirely within the scope of her negligence claims (*id.* ¶¶ 59-111). *See Fay*, 151 N.Y.S.3d at 643.

Plaintiff's premises liability claim is therefore DISMISSED as duplicative of her negligence claims and Defendants' motions to dimiss are GRANTED for this claim.

### F. Breach of Fiduciary Duty

To state a claim for breach of fiduciary duty, a plaintiff must plausibly allege facts demonstrating "breach by a fiduciary of a duty owed to plaintiff; defendant's knowing participation in the breach; and damages." *SCS Commc'ns, Inc. v. Herrick Co.*, 360 F.3d 329, 342 (2d Cir. 2004) And a fiduciary relationship is "one founded upon trust or confidence reposed by one person in the integrity and fidelity of another. It is said that the relationship exists in all cases in which influence has been acquired and abused, in which confidence has been reposed and betrayed." *Penato v. George*, 383 N.Y.S.2d 900, 904 (2d Dep't 1976). Absent an allegation of a special relationship, mere assertions of "trust and confidence" are insufficient to support a claim of a fiduciary relationship. (FAC ¶ 122); *see also Freedman v. Pearlman*, 706 N.Y.S.2d 405, 409 (1st Dep't 2000).

Where, as here, "a parishioner plaintiff seeks to establish the existence of a fiduciary relationship with an institutional church defendant, the plaintiff may not merely rely on the church's status in general, but must come forward with facts demonstrating that his or her relationship with the institution was somehow unique or distinct from the institution's relationship with other

parishioners generally." *Doe v. Holy See (State of Vatican City)*, 793 N.Y.S.2d 565, 568 (3d Dep't 2005).

The court finds that Plaintiff has failed to establish a fiduciary relationship between Plaintiff and Defendants. Generalized allegations of a relationship by nature of Plaintiff's attendance at Defendants' school and participation in church are precisely the types of claims courts have held insufficient to state a claim for breach of fiduciary duty. *See Holy See*, 793 N.Y.S.2d at 568-69 (providing pastoral services and instructional programs for children found insufficient to demonstrate existence of fiduciary relationship); *Bouchard v. New York Archdiocese*, No. 04-CV-9978 (CSH), 2006 WL 1375232, at *6 (S.D.N.Y. May 18, 2006) ("Plaintiff's allegations do not make out the existence of any sort of special relationship between the Church Defendants and Plaintiff beyond that general relationship between a church or religious body and a congregant."). Further, it cannot be said that Defendants assumed a fiduciary duty by attempting to resolve issues of sexual abuse where Plaintiff did not report any allegations to any agent of the Defendants. *See Martinelli v. Bridgeport Roman Cath. Diocesan Corp.*, 196 F.3d 409, 430 (2d Cir. 1999) (finding diocese had a fiduciary duty when it was informed of misconduct); *Moses v. Diocese of Colorado*, 863 P.2d 310, 323 (Colo. 1993) (finding diocese assumed fiduciary duty when it acted to resolve complaints of sexual abuse).

Plaintiff has therefore failed to allege that a fiduciary relationship was created with Plaintiff and the Defendants. *Caldwell v. Archdiocese of New York*, No. 20-CV-1090 (VSB), 2021 WL 1999421, at *9 (S.D.N.Y. May 19, 2021) ("Plaintiffs' sexual abuse as children by Defendants' clergy employees does not, by itself, establish a special relationship."). Plaintiff's claim for breach of a fiduciary duty is therefore DISMISSED.

### G. Leave to Amend

Plaintiff has requested the opportunity to amend her pleadings should this court find her First Amended Complaint in any way deficient. (*See* Opp. at 21.) Leave to amend a party's pleadings "shall be freely given" by the court "when justice so requires." Fed. R. Civ. P. 15(a). The court declines to grant leave to amend but concludes that Plaintiff may seek this court's leave to amend within 30 days of the date of this Memorandum & Order. While Plaintiff has amended her complaint once, the court notes that this is the first adjudication of Plaintiff's claims on the merits. Accordingly, if Plaintiff finds that she can, in good faith, clarify the timeline of factual allegations regarding her alleged abuse and plead with particularity facts showing that a special relationship existed between Plaintiff and *both* St. Mary's and the Brooklyn Diocese, she may seek leave to file a Second Amended Complaint outlining the amendments that purport to resolve these issues.

## V. CONCLUSION

For the aforementioned reasons, Defendants St. Mary's and Brooklyn Diocese's motions to dismiss are GRANTED in part and DENIED in part. Defendants' motions are DENIED with respect to Plaintiff's negligence claim. Defendants' motions are GRANTED without prejudice with respect to Plaintiff's claims for negligent training, supervision, and retention; premises liability; gross negligence; and breach of fiduciary duty. Plaintiff may seek leave to amend her complaint within 30 days of the date of this Memorandum and Order.

SO ORDERED.

Dated:   Brooklyn, New York
         January 19, 2024

                                        s/Nicholas G. Garaufis
                                        NICHOLAS G. GARAUFIS
                                        United States District Judge

15