**KELLEY DRYE & WARREN LLP**

NEW YORK, NY    WASHINGTON, DC    CHICAGO, IL    HOUSTON, TX
LOS ANGELES, CA    SAN DIEGO, CA    MADISON, NJ    STAMFORD, CT

**Edwin Adlam Herod**
3 World Trade Center
175 Greenwich Street
New York, NY 10007

Tel:  (212) 808-7800
Fax: (212) 808-7897
THerod@KelleyDrye.com

December 8, 2025

**By ECF**

The Honorable Cheryl L. Pollak, U.S.M.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: *Jeanne LaFrantz v. Diocese of Brooklyn et al.*,
       Civ. No. 21-cv-04920-NGG-CLP

Dear Judge Pollak:

  We represent defendant The Roman Catholic Diocese of Brooklyn, New York (the "Brooklyn Diocese").  Pursuant to the Court's November 7, 2025 Order, we write regarding the status of the discovery and to set forth our position as to why Plaintiff's asserted privilege over certain responsive documents in possession of Dr. Paula Eagle ("Dr. Eagle") is improper.

  Following the November 6, 2025 status conference (the "November 6 Conference"), the Brooklyn Diocese set out its position on Dr. Eagle's documents and Plaintiff's assertions of privilege on the same day.  We did not receive Plaintiff's position until November 26, 2025.[1]  Ultimately, Plaintiff withdrew her assertions of privilege over some categories of documents and agreed to produce other documents subject to narrow redactions.  Plaintiff made a modified production of documents on December 4, 2025, but most of the purportedly privileged communications remain heavily redacted.  And there are still a number of documents that are, on their face, not protected by the attorney-client privilege.

  The remaining documents in dispute may be divided into two categories:

  (1) communications between Plaintiff and Dr. Eagle, *only* ("**Category 1**"); and
  (2) communications between Plaintiff, various counsel, and Dr. Eagle ("**Category 2**").

(*See* Plaintiff's Dec. 4, 2025 Revised Privilege Log (attached as **Exhibit A**).)  As set forth below, the first category of documents is not shielded by attorney-client privilege because the communications were not conducted at the instruction of Plaintiff's counsel or for counsel's preparation in this case.  Because Dr. Eagle was a treating physician at the time—and not an expert—the second category of documents may, likewise, fall outside of the privilege.  We therefore request that the Court direct Plaintiff to produce unredacted copies of the Category 1 documents to Defendants and transmit Category 2 documents to the Court for an *in camera* review.

---

[1]  The parties met and conferred the same day.

The Honorable Cheryl L. Pollak, U.S.M.J.
December 8, 2025

### A. Category 1 Documents: Plaintiff Cannot Invoke Attorney-Client Privilege for Therapy-Related Communications Sans Attorneys

Communications between Dr. Eagle and Plaintiff, without counsel, that were not directed by or for the benefit of Plaintiff's counsel, cannot be privileged. For a communication between a Plaintiff and her treating physician to be protected by the attorney-client privilege, Plaintiff must have "met with the psychiatrist [1] at the direction of her attorney [2] for the purpose of the attorney's preparation for trial." *See Murray v. Board of Educ. of City of New York*, 199 F.R.D. 154, 156–57 (S.D.N.Y. 2001). This is consistent with well-established precedent that attorney-client privilege only extends to third parties when the communication is to assist the attorney in rendering advice to the client. *United States v. Adlman*, 68 F.3d 1495, 1499 (2d Cir. 1995).

At the November 6 Conference, Plaintiff's counsel explained that while they initially hired Dr. Eagle to serve as an expert, they ultimately allowed Plaintiff to see Dr. Eagle as her treating physician. Plaintiff's productions thus far show that Dr. Eagle completed her initial evaluations in or around May and June 2022; following those initial evaluations, Dr. Eagle began treating Plaintiff weekly. (*See* Dr. Eagle Invoices at EAGEL000241–268 (attached as **Exhibit B**).) From at least July 2022 onward, the invoices list separate, weekly "psychotherapy" sessions in one-hour increments (not expert fees). (*See id.*) The earliest Category 1 document is September 20, 2022.

*First*, the Category 1 communications were not at the direction of Plaintiff's attorney. These communications all post-date the period in which Dr. Eagle allegedly functioned as an expert. In fact, at the November 6 Conference, Plaintiff's counsel admitted that they specifically directed Plaintiff *not* to have these discussions with Dr. Eagle and that they did not have control over Dr. Eagle for these sessions. These communications were therefore not created at the direction of her attorney.

*Second*, these communications were also not for counsels' preparation at trial. On a November 26, 2025 conferral, Plaintiff's counsel conceded that they were unaware of these communications until October or November of this year (*i.e.*, about one to three years after they occurred). If Plaintiff's counsel was unaware of these discussions for approximately one to three years, these discussions could not have been created for the purpose of preparing Plaintiff's counsel for trial. Indeed, on November 26, Plaintiff's counsel explained that these communications were largely Plaintiff expressing her upset and frustration with the case to Dr. Eagle—*i.e.*, these were psychotherapy sessions via email (not trial preparation).

These documents therefore should be produced, and Plaintiff's counsel has offered no viable theory to the contrary. On November 26, counsel looked to justify the privilege by stating that counsel paid for these psychotherapy sessions. This is an insufficient basis under the law, which looks to the purpose of the communication, not the payment. Under *Murray* and *Adlman*, communications between Plaintiff and her psychiatrist can only be protected by attorney client privilege if the Plaintiff met with her psychiatrist at the direction of her attorney and for the purpose of preparing the attorney in the case. That did not happen here.

2

The Honorable Cheryl L. Pollak, U.S.M.J.
December 8, 2025

Moreover, these communications are critical to the Brooklyn Diocese's ability to defend this case. For example, Dr. Eagle still has not produced many patient notes, and thus, any records (including psychotherapy-by-email) received from Plaintiff are valuable in preparing to depose Dr. Eagle and in understanding Plaintiff's purported psychological damages.[2] Information about Plaintiff's treatment—even if it extends to her handling and processing of this very litigation—is relevant to her psychological state, which she has put at issue in this case.

At bottom, the Category 1 documents are facially not privileged. Plaintiff cannot invoke attorney-client privilege if her attorneys did not direct her to engage in the communication *and* do so for the preparation of their case. *See Murray*, 199 F.R.D. at 156–157. Admittedly, these communications were neither. Plaintiff cannot meet her burden, and these documents should be produced unredacted. *See In re Aenergy*, S.A., 451 F. Supp. 3d 319, 322 (S.D.N.Y. 2020).

### B. Category 2 Documents: The Mere Inclusion of an Attorney on Communications, Without More, Is Insufficient to Assert Attorney-Client Privilege

The presence of a third party on communications with an attorney may vitiate any attorney-client privilege. "The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011). As explained above, Plaintiff must prove that the communications that included Dr. Eagle as a third party (Category 2) were conducted at the direction of counsel for the purposes of litigation. Plaintiff has made no such showing.

If Dr. Eagle was a passive participant or even discussed Plaintiff's then-current psychological wellbeing—as opposed to providing expertise to counsel regarding the claims in her case—then Dr. Eagle's presence on Category 2 communications vitiates the privilege.[3] *See Mejia*, 655 F.3d at 132–33 (holding that knowingly including a third-party vitiates attorney-client privilege).

At minimum, it appears that these documents have been heavily redacted (not narrowly redacted). We therefore respectfully request that Your Honor direct Plaintiff to submit this category of documents for *in camera* review by the Court to determine the appropriateness of Plaintiff's redactions and direct their disclosure in unredacted form, as appropriate.

---

[2] In addition, Plaintiff's December 4, 2025 production revealed <u>three</u> (previously redacted) additional doctors who were, at times, treating Plaintiff who were previously undisclosed in this case. The previously redacted email in question disclosed those doctors *to* Plaintiff's counsel and explained, for one of the doctors, "I shared my total history with her . . . but what her notes contain I don't know." Moreover, many of the communications in these productions were in ***Plaintiff's*** (and Plaintiff's counsels') possession but were not previously produced or logged as privileged.

[3] Notably, Dr. Eagle has not been disclosed as Plaintiff's testifying expert, nor was an expert report served. And Plaintiff's deadline to serve an initial expert report has come and gone. (*See* Aug. 18, 2025 Scheduling Order ("Initial expert reports to be served by 10/30/2025.").)

3

The Honorable Cheryl L. Pollak, U.S.M.J.
December 8, 2025

*   *   *

      Accordingly, we respectfully request that the Court order Plaintiff to remove all redactions from the Category 1 documents and perform an *in camera* review of the Category 2 documents. We thank the Court for its continued attention to this matter.

Respectfully Submitted,

*/s/ Edwin Adlam Herod*

Edwin Adlam Herod

cc: All counsel of record (via ECF)

4