# KELLEY DRYE & WARREN LLP

NEW YORK, NY   WASHINGTON, DC   CHICAGO, IL   HOUSTON, TX
LOS ANGELES, CA   SAN DIEGO, CA   MADISON, NJ   STAMFORD, CT

**Edwin Adlam Herod**
3 World Trade Center
175 Greenwich Street
New York, NY 10007

Tel: (212) 808-7800
Fax: (212) 808-7897
THerod@KelleyDrye.com

February 6, 2026

**By ECF**

The Honorable Peggy Cross-Goldenberg, U.S.M.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *Jeanne LaFrantz v. Diocese of Brooklyn et al.*,
                 Civ. No. 21-cv-04920-NGG-PCG

Dear Judge Cross-Goldenberg:

     We represent defendant The Roman Catholic Diocese of Brooklyn, New York (the "Brooklyn Diocese"). Pursuant to Your Honor's Individual Practice Rules III.A.2., the parties submit this joint letter seeking an informal discovery conference regarding Plaintiff's refusal to undergo to an independent medical examination ("IME") pursuant to Rule 35 of the Federal Rules of Civil Procedure.

## JOINT STATEMENT OF THE CASE

*Claims and Defenses*

     On August 13, 2021, plaintiff Jeanne LaFrantz ("Plaintiff") filed this lawsuit under the New York Child Victims Act alleging that she was sexually abused by Father John Campbell ("Campbell") between 1960 and 1966 while a parishioner and student at St. Mary's Roman Catholic Church in Long Island City, Queens ("St. Mary's").[1] (ECF No. 28 ("First Amended Complaint" or "FAC") ¶¶ 3, 88.) According to Plaintiff, Campbell sexually abused her on a weekly basis, approximately three to four times per week, at St. Mary's rectory. (*Id*. ¶ 20.) Plaintiff claims that the Brooklyn Diocese and St. Marys' agents and employees knew or had reason to know that Campbell was sexually abusing Plaintiff. (*Id*. ¶ 6.)

     Plaintiff alleged five causes of action against Defendants: (1) negligence, (2) negligent training, supervision and retention, (3) gross negligence, (4) premises liability, and (5) breach of fiduciary duty. (FAC ¶ 7.) As to each cause of action, Plaintiff alleges physical and emotional damage. (*See id*. ¶¶ 81, 94, 109, 118, 132.). Specifically, Plaintiff alleges "great pain of mind and body, shock, mental anguish, emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, anger, rage, frustration, loss of enjoyment of life, loss of consortium, loss of love and affection, sexual dysfunction, past and future medical expenses for psychological

---

[1] Plaintiff originally filed this action in the Southern District of New York. On September 1, 2021, the court transferred this case to the Eastern District of New York. (ECF No. 9.)

The Honorable Peggy Cross-Goldenberg, U.S.M.J.
February 6, 2026

treatment, therapy and counseling, lost wages and employment opportunities, lost choses in action, and other compensation." (*Id.* ¶ 58.)

On June 27, 2022, the Brooklyn Diocese filed a motion to dismiss the FAC. (ECF No. 40.) On January 19, 2024, Judge Garaufis issued a decision and order dismissing all of Plaintiff's claims, permitting only the negligence claim to survive on theories of *in loco parentis* and landowner duties. (ECF No. 70.)

The Brooklyn Diocese has numerous defenses to Plaintiff's remaining claim, including: (1) the Brooklyn Diocese did not own the land and thus was not under a landowner duty, (2) the Brooklyn Diocese was not the school and thus cannot be subject to an *in loco parentis* duty, (3) Plaintiff's mother made direct arrangements with Fr. Campbell for the time Plaintiff spent with him and thus neither the Brooklyn Diocese nor St. Mary's were under any duty of *in loco parentis*; and (4) Defendants were not on notice of any propensity to commit such acts on the part of Fr. Campbell.

*The Parties' Attempts to Resolve the Instant Dispute*

On July 31, 2025, Plaintiff agreed to submit to an IME. Since that time the parties discussed scheduling Plaintiff's IME but had not done so as Defendants were awaiting medical records from Plaintiff's treating psychiatrist, Dr. Paula F. Eagle. The Court has scheduled and adjourned the IME deadline since July 21, 2025, to enable the Brooklyn Diocese to depose and obtain records from Dr. Eagle. (*See* July 21, 2025 Minute Entry, August 18, 2025 Scheduling Order, and November 7, 2025 Minute Entry.)

As recently as January 9, 2026, Plaintiff requested that the Brooklyn Diocese provide her with proposed dates for an IME, which the Brooklyn Diocese did. And on January 20, 2026, Plaintiff requested to know who would be performing the IME and what testing methods would be employed. The Brooklyn Diocese responded to Plaintiff, explaining that the IME "will be conducted by Dr. Randall Solomon, M.D., of Island Psychiatry. Dr. Solomon will be assisted by Jacqueline Brigante (Sanzari), LMHC, who will function as an assisting clinician. The IME will consist of a comprehensive clinical interview and mental status examination, and, in advance of the examination, Plaintiff will be given standard intake paperwork prior to the IME, that includes self-report screening instruments."

The Brooklyn Diocese deposed Dr. Eagle on January 26, 2026. Shortly after Dr. Eagle's deposition, Plaintiff withdrew her agreement to submit to an IME. The parties exchanged emails on this issue and met and conferred on January 30, 2026. During the meet and confer, Plaintiff's counsel indicated that, given her deposition testimony, they would not be relying on Dr. Eagle as their expert in this case. Additionally, Plaintiff's counsel stated that he would not be agreeing to any IMEs with the Brooklyn Diocese in any case given Plaintiff's counsel's issue with an IME that occurred in a separate action. That issue is fully briefed and a conference was held on February 5, 2026. *See Guerriero v. Diocese of Brooklyn et al.*, No. 1:21-cv-04923, ECF Nos. 104, 108, 109.

2

The Honorable Peggy Cross-Goldenberg, U.S.M.J.
February 6, 2026

## DEFENDANTS' POSITION

Defendants respectfully request Plaintiff to submit to an IME before Dr. Solomon as good cause exists for such an examination in this case.

*First*, Plaintiff's First Amended Complaint asserts injuries to her mental health, including disabling "pain," which both she and her treating physician have testified is (at least in part) purportedly derived from the psychological trauma she suffered. Specifically, Plaintiff alleges that "Defendants' acts" caused her injuries, including, "great pain of mind and body, shock, mental anguish, emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, anger, rage frustration, loss of enjoyment of life, loss of love and affection, sexual dysfunction, past and future medical expenses for psychological treatment, therapy, and counseling." (FAC ¶ 58.) And at her deposition, Plaintiff testified that the alleged abuse led to trauma that is the source of her pain. (LaFrantz Dep. Tr. 101:5–14.) Dr. Eagle, likewise, testified that Ms. LaFrantz's alleged pain was caused, in part, by trauma from the abuse. Because Plaintiff seeks damages derived from a purported psychiatric injury, good cause exists to compel her to submit to an IME. *See Kelly v. Times/Rev. Newspapers Corp.*, No. 2:14-cv-02995, 2016 WL 2901744, at *1 (E.D.N.Y. May 18, 2016) (holding that "'good cause' exists where the plaintiff alleges that the defendant's unlawful conduct caused a mental injury"); *Guzman v. News Corp.*, No. 1:09-cv-09323, 2012 WL 2148166, at *1 (S.D.N.Y. June 13, 2012) (citing Fed. R. Civ. P. 35(a)(1) and *Schlagenhauf v. Hodler*, 376 U.S. 104, 118 (1964)) (allegations of psychological injury sufficient to establish good cause for a medical examination under Rule 35); *Robinson v. De Niro*, 600 F. Supp. 3d 286, 289–290 (S.D.N.Y. 2022).[2]

*Second*, this IME is particularly necessary given Plaintiff's failure to disclose relevant medical providers and the existence of additional medical records which Defendants have not yet received. Dr. Eagle—Plaintiff's only (known) treating psychiatrist—has failed to provide all of Plaintiff's medical records. Plaintiff first asserted Dr. Eagle only had a 3-page letter and nothing else; then, at Defendants' insistence that this production was incomplete, Plaintiff produced 47 pages of records from Dr. Eagle and nothing else. On November 5, 2025, Dr. Eagle finally produced 292 pages of records, many of which were redacted by Plaintiff on the basis of privilege.[3] Defendants disagreed that these medical records were privileged. Ultimately, Plaintiff waived her claim of privilege and produced the 292 pages in unredacted form on December 15, 2025. (ECF Nos. 88 at 1, 88-1 at 2–10, 90.) Notably, the documents received from Dr. Eagle reveal *eleven* different medical providers that were not previously disclosed by Plaintiff, but which were known by Plaintiff's counsel as of at least December 2022.[4] And

---

[2] Regardless of Plaintiff's tactical decision to drop Dr. Eagle, an IME is a separate discovery mechanism and there is good cause for an IME based on Plaintiff's allegations and deposition testimony alone. The Brooklyn Diocese has a right to explore Plaintiff's claims to put on its defense.

[3] There was also a privilege dispute over approximately 40% of these pages. Plaintiff eventually waived privilege. (ECF Nos. 88 at 1, 88-1 at 2–10, 90.)

[4] While these eleven providers may not all be psychiatric specialists, these providers include pain management specialists, disc specialists, hip specialists, and rheumatologists. At her deposition, Dr. Eagle acknowledged that Plaintiff has other causes of her alleged disabling pain—including hip issues, disc issues, and arthritis—that would account for some (and possibly all) of that pain. Thus, discovery into these issues is vital to understanding the scope and nature (and thus causation) of any alleged disabling pain—*i.e.*, the pain Ms.

3

The Honorable Peggy Cross-Goldenberg, U.S.M.J.
February 6, 2026

Dr. Eagle testified that she kept insufficient records *and* that there were additional records she had not yet produced.[5]

***Finally***, Plaintiff has refused to submit to an IME due to (erroneous) allegations in ***an unrelated case*** (involving the same counsel for all parties) where the Brooklyn Diocese is a defendant and a (voluntary) exam was conducted by a ***different expert***.[6]  *See Guerriero v. Brooklyn Diocese*, No. 1:21cv4923, ECF Nos. 104, 108, 109.  The allegations in *Guerriero* have no bearing on this case.  The conducting examiner here—Dr. Solomon—was not the conducting examiner in *Guerriero*.  Despite disagreeing with Plaintiff's position, Defendants have provided Plaintiff with all of the information she has sought regarding the IME, including who would be conducting the examination and what tests would be conducted during the IME.  And, in order to accommodate Plaintiff's requests, Defendants offered to conduct the IME remotely.[7]  Defendants remain willing to negotiate reasonable safeguards for the IME.  In fact, during the January 30 meet and confer, Defendants asked if there were any accommodations that could be made to resolve Plaintiff's concerns and Plaintiff's counsel stated he was unwilling to consent to an IME under any circumstances with the Brooklyn Diocese.

Ultimately, Plaintiff has placed her mental status at issue and an unexplained lack of medical disclosure has created a heightened need for an IME.  The Brooklyn Diocese's expert, Dr. Solomon, has requested an IME so that he is able to appropriately and fully opine on the condition of Plaintiff.  Defendants have good cause for an IME, and thus respectfully request that the Court order a pre-motion conference or, in the alternative, set a briefing schedule.

---

LaFrantz predicates her damages allegations upon.  The Brooklyn Diocese requested that Plaintiff's counsel provide authorizations for the previously undisclosed medical providers.  The Brooklyn Diocese reserves its right to move to compel authorizations pursuant to the Court's July 21, 2025 order.

[5]  The Brooklyn Diocese requested these records from Dr. Eagle's counsel.

[6]  The allegations in *Guerriero* are wrong and frivolous.  In that case, the Brooklyn Diocese properly disclosed its expert as its testifying expert.  Plaintiff voluntarily submitted to an IME.  During the IME, plaintiff provided informed consent and agreed to participate in the IME, which was conducted by the expert with a clinical assistant present.  Subsequently, the same individual who was the clinical assistant at the IME assisted in preparing Dr. Bardey's expert report.  Dr. Bardey permitted that individual to sign the report with him.  There was nothing improper about the IME.

Prior to the close of discovery, Dr. Bardey was available for a deposition but Plaintiff never deposed him.  On February 5, 2026, Magistrate Judge Eshkenazi held a motion hearing to address Plaintiff's motion to strike.  At the hearing, Judge Eshkenazi offered to rule on the motion, but told Plaintiff's counsel that they should consider deposing Dr. Bardey, given that the Court did not have sufficient evidence.  In response, Plaintiff agreed to depose Dr. Bardey and the Brooklyn Diocese agreed to produce Dr. Bardey for a deposition.

[7]  On January 20, 2026, the Brooklyn Diocese wrote Plaintiff's counsel: "Below please find proposed dates for Plaintiff's IME, ***which will be conducted remotely*** . . ." (emphasis added).

The Honorable Peggy Cross-Goldenberg, U.S.M.J.
February 6, 2026

## PLAINTIFFS' POSITION

Following an extraordinary series of events, Plaintiff withdrew her consent to participate in an IME for the following reasons:

(1) In *Guerriero v. The Diocese of Brooklyn, et al.*, Case No. 21-cv-04923-MKB-LKE, the same Defendants and counsel recently authorized and permitted an improper IME. Unknown to Plaintiff or his counsel in that case, Defendants had an additional expert present along with their designated expert, a psychologist, and had the undisclosed expert examine Plaintiff without disclosure, consent, or what methods and/or testing she would provide. Further, that psychologist signed off on and created a joint report without consent of Plaintiff or his counsel. The Honorable Lara K. Eshkenazi held a hearing on February 5, 2026 to address this issue raised by Plaintiff in the form of a Motion to Strike, and reopened discovery so that Plaintiff could gain more information about the examination. Judge Eshkenazi is reserving her ruling until Plaintiff is able to obtain needed information. In addition to the misconduct, Defendants failed to comply with Rule 26(a) by not providing methodology and failed to comply with Rule 35 by not strictly limiting the IME to the provider disclosed and approved. Defendants continue to assert that they have done nothing wrong. In the instant case, Defendants have disclosed an additional person to assist their expert in doing an IME but do not provide any good reason why and additional person is needed. Plaintiff's object to any IME due to the abuse of the process by these same Defendants in this District.

(2) Plaintiff is withdrawing treating psychiatrist, Paula Eagle, M.D. as a testifying expert and will not be calling her as a treating physician. There is no affirmative expert opinion being offered, so the Defendants do not need a rebuttal expert in this case. There is no opinion to rebut. Given that this is a child sex abuse case, and the IME is likely to be traumatic for Ms. Lafrantz, this fact outweighs the need of Defendant to have Plaintiff go through an IME.

(3) Further, given that Ms. LaFrantz has serious medical conditions that make travel functionally impossible, ordering her to attend an IME with the experts Defendants hired in New York will be a severe hardship.

The Honorable Peggy Cross-Goldenberg, U.S.M.J.
February 6, 2026

\*    \*    \*

      Accordingly, the parties respectfully request that the Court hold a conference in order to address this issue.

                               Respectfully Submitted,

                               Edwin Adlam Herod

cc: All counsel of record (via ECF)